# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

AGLAED GONZALEZ RIVERA,

Plaintiff,

v.

HOSPITAL HIMA-CAGUAS, et al.,

Defendants.

CASE NO. 15-1538 (GAG)

## OPINION AND ORDER

Pending before the Court are Defendants' renewed Motion for Summary Judgment (Docket No. 79) and two other motions: Plaintiff's Motion to set aside voluntary dismissal against Dr. Hector Berrios Echevarría (Docket No. 66); and Defendants' Motion to exclude the testimony of Plaintiff's proposed expert witness, Dr. Allan Hausknecht. (Docket No. 67).

After reviewing the parties' submissions and pertinent law, the Court **GRANTS** Defendants' Motion to exclude the testimony of Plaintiff's proposed expert witness. (Docket No. 67); **DENIES** Plaintiff's Motion to set aside voluntary dismissal against Dr. Berríos (Docket No. 66) and, **GRANTS** Defendants' renewed Motion for Summary Judgment. (Docket No. 87).

### I.    Background

Aglaed Gonzalez Rivera ("Plaintiff") sued Defendants for injuries resulting from the negligent care afforded to Plaintiff by the medical staff at Hospital HIMA-Caguas. (Docket No. 1). Plaintiff filed the above-captioned complaint, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, seeking to hold Defendants liable for her injuries alleging they "breached the standards of proper medical care generally recognized in the medical profession and expected from a reasonably competent physician in like circumstances" by: (1) failing to timely diagnose

Plaintiff's medical condition, (2) negligently administering —failing to adequately administer—the spinal anesthesia, (3) failing to advise Plaintiff about the risks inherent to the spinal anesthesia, as a result of which she was unable to provide an informed consent, (4) failing to adhere to Plaintiff's wish of not being administered spinal anesthesia, (5) failing to provide adequate post-operative care and monitoring her postoperative condition, (6) discharging Plaintiff while suffering neurological deficiencies, and (7) failing to timely diagnose Plaintiff's neurological deficiencies. (Docket No. 1 ¶¶ 55-67.) For these reasons, Plaintiff posits Defendants' negligent acts and/or omissions caused her injuries that led to her permanent paraplegic condition.[1]

After meeting with the parties on several occasions, the Court set the following deadlines: the disclosure of Plaintiff's expert report to be completed by May 20, 2016, the conclusion of discovery by November 15, 2016, and dispositive motions by December 16, 2016. (Docket No. 38).

One week before the deadline to file dispositive motions, Plaintiff moved to voluntarily dismiss without prejudice her claims against co-defendant Dr. Berríos stating that she believed "she did not have a cause of action against said defendant." (Docket No. 42). The Court granted said request and entered partial judgment dismissing without prejudice Plaintiff's claims against Dr. Berríos. (Docket No. 44).

---

[1] Plaintiff alleges that on March 15, 2010, Plaintiff—while three months pregnant—was taken to the emergency room at HIMA Hospital in Caguas because she was experiencing pelvic pain and slight vaginal bleeding. (Docket No. 1 ¶ 11.) She was seen by an emergency physician, Dr. Geovannie Marcano-Centeno and Dr. Berríos, Plaintiff's obstetrician. After Plaintiff began to experience profuse and abundant vaginal bleeding, Dr. Berríos examined her and diagnosed she was having an *incomplete abortion*. Plaintiff underwent surgery. Plaintiff alleges that as a result of spinal anesthesia that was administered for the surgery, she suffered a perforation in her spinal cord that left her in a paraplegic state –completely paralyzed from the waist down. Plaintiff and her husband left Hospital HIMA-Caguas in the morning hours of March 16. She alleges that, when she left HIMA Hospital she was still in pain and was unable to walk. Plaintiff returned to HIMA Hospital on March 17. She was examined by Dr. Marcano and ultimately admitted to HIMA Hospital until April 3, 2010 when she was transferred to HealthSouth Rehabilitation Center. ¶ 51. Plaintiff was discharged from HealthSouth on April 17, 2017. Plaintiff alleges she has been unable to move her legs, has not regained sensation from the waist down and is permanently tied to a wheelchair since the March 15 surgery at HIMA Hospital. (Docket No. 1 ¶ 53.)

After the conclusion of discovery, Defendants moved to exclude the testimony of Plaintiff's expert witness, Dr. Lasalle, alleging it lacked sufficient reliability because it is baseless, premised on inaccurate and incorrect facts, and irrelevant. (Docket No. 48). They argued said testimony was unreliable because Dr. Lasalle reviewed only a portion of Plaintiff's medical records, that it lacked in factual foundation and lastly that Plaintiff is not paraplegic, which meant that his opinion was based on an incorrect factual assumption. (Docket No. 48).

At the same time, Defendants moved the Court for summary judgment, asserting the absence of proof that satisfies the essential elements of Plaintiff's negligence claim, namely a breach of Defendants' duty of care and causation. (Docket No. 45). In their motion, they argued for the exclusion of Dr. Lasalle's testimony. (Docket No. 45). Plaintiff responded in opposition, arguing in favor of the admissibility of Dr. Lasalle's expert opinion and the existence of genuine issues of material fact that preclude summary judgment. (Docket No. 54).

On September 18, 2017, the Court issued an Opinion and Order granting Defendants' Motion in Limine, excluding Dr. Lasalle's testimony and expert report because it did not meet the Daubert standard. (Docket No. 72.) The Court deemed Dr. Lasalle's opinion unreliable and insufficient as it lacked "a factual foundation and based on the proposed witnesses' speculation." (Docket No. No. 72 at 12). "This is not because of a flawed scientific principle—that abundant loss of blood can cause a spinal cord infarct—but because there was no substantial basis for concluding that it occurred here, much less by ruling out the possible causes according to an incomplete representation of the patient's medical condition." Id.

That Court denied without prejudice Defendants' Motion for Summary Judgment at Docket No. 45 and ordered the parties to "on or before October 10, 2017, meet and discuss possible extrajudicial resolution to this case in light of the Court's opinion and order striking Dr. Lasalle's

testimony. . . . If the parties are unable to reach an agreement, Defendants may renew their request for summary judgment and plaintiff may also seek any other remedy." (Docket No. 73).

## II.    <u>Motion to Exclude Dr. Allan Hausknecht's Expert Report</u>

The Court must first address Defendants' request to exclude Plaintiff's second proposed expert witness, Dr. Hausknecht. (Docket Nos. 67; 91). Defendants claim that Plaintiff, in violation of Rule 26 (a)(2) of the Federal Rules of Civil Procedure, failed to timely disclose Dr. Hausknecht's expert report.

In his report, Dr. Hausknecht diagnoses Plaintiff's conditions as "transient ischemic attack, reversible ischemic neurologic deficit of the spinal cord." (Docket No. 87). He concludes that Plaintiff's "condition occurred because of blood pressure changes, loss of blood, loss of blood volume and coagulation difficulties that typically occur with vaginal bleeding at the time of delivery or during an abortion." <u>Id.</u>

Defendants responded and move to exclude said testimony. They argue that: 1) Dr. Hausknecht's report was disclosed over a year after the court's deadline for disclosure of expert reports; 2) Plaintiff did not request leave or an extension of the discovery deadline; 3) Plaintiff failed to provide an excuse or justification for the delay; and 4) Plaintiff further articulates a new theory of liability, not alleged in the complaint.  (Docket No. 67). Defendants further argue that Plaintiff's delay in disclosing the experts report prejudices them. (Docket No. 91). Plaintiff made no effort to expound one reason to allow this report, for which Defendants lacked an opportunity to depose its author. Further, this report constitutes a blatant violation of Defendants' due process and the Court's management and scheduling orders. <u>Id.</u>

Defendants argue that "Plaintiff's surreptitious attempt not to disclose to the Court the full extent of this so called report, which not only refers to the already dismissed claims against former codefendant Dr. Berríos, but also as it relates to the remaining defendants, constitutes a blatant

violation of defendants' due process and the Court's management and scheduling orders." (Docket No. 67). Lastly, Defendants also move the Court to impose costs and attorney fees. Id.

In defense of the late disclosure of Dr. Hausknecht's expert report Plaintiff argues that: (1) the May 26, 2016, expert report deadline exclusively pertained to Plaintiff's anesthesiologist expert, Dr. Lasalle; (2) the disclosure date of Dr. Hausknecht's report was unknown to Plaintiff particularly since it was contingent on other matters, therefore his deposition was never discussed; (3) because no settlement conferences, pretrial or jury trial has been set, Defendants would suffer no delay or prejudice. (Docket Nos. 69-1; 87).

a. Rule 26 disclosures

 "The Civil Rules require litigation adversaries to disclose to each other the identity of proposed expert witnesses and the subjects on which their testimony will be offered. Time is of the essence, and the disclosures must be made well in advance of trial." Samaan v. St. Joseph Hosp., 670 F.3d 21, 35 (1st Cir. 2012) (citing FED. R. CIV. P. 26(a)(2)(A)-(C)).

In a medical malpractice case, pursuant to Rule 26 of the Federal Rules of Civil Procedure, "the plaintiff must disclose to all other parties in the case the expert's identity and submit a written report by the expert including a statement of all of the opinions that the expert will express at trial and the reasons for them." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); see also Cardona-Santiago v. Corr. Health Servs. Corp., No. CIV. 13-1348 DRD, 2015 WL 1417425, at *15 (D.P.R. 2015). Rule 26 better prepares attorneys to cross-examine opposing parties' experts at trial. See Laplace–Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002).

Where a district court has established a disclosure date, as in this case, a party must disclose the expert's identity at the ordered time. If a party's expert disclosure is untimely, the party is not allowed to use that witness, relevant expert information, "or supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless." Esposito, 590 F.3d at 77–78.[2]

It is uncontested that Plaintiff's counsel notified Defendants of Dr. Hausknecht's expert report over a year after the deadline for its disclosure had elapsed. Hence, Plaintiff's belated disclosure constitutes a Rule 26 discovery violation.

b. The Macaulay Factors

Now the Court must choose an appropriate sanction. "A district court has wide discretion in choosing sanctions for discovery violations." Samaan, 670 F.3d at 36; see Santiago–Diaz v. Lab. Clinico Y De Referencia Del Este, 456 F.3d 272, 275 (1st Cir. 2006). Preclusion, however, "is not a strictly mechanical exercise." Esposito, 590 F.3d at 77–78 (1st Cir. 2009) (quoting Santiago-Díaz, 456 F.3d at 276.) "[I]n its discretion, the district court may choose a less severe sanction. Id.

The First Circuit in Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003) guides district courts to "take into account a multiplicity of pertinent factors, such as: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosures' adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket." Esposito, 590 F.3d at 78.

In this case, the history of this litigation is an important factor. To make an adequate assessment of the totality of the circumstances in this tangled litigation, the Court scrutinizes the

---

[2] "Failure to comply with disclosure obligations can have severe consequences. Rule 37 authorizes district courts to sanction noncomplying parties, and, although sanctions can vary depending on the circumstances, "[t]he baseline rule is that 'the required sanction in the ordinary case is mandatory preclusion.'" Plaza Carolina Mall, L.P. v. Municipality of Barceloneta, 91 F. Supp. 3d 267, 279 (D.P.R. 2015).

procedural setting and timing of Plaintiff's late disclosure. Here, it is important to take a closer look into the procedural history leading up to, and immediately following, Plaintiff's late disclosure.

A closer look at the dismissal, and request for reinstatement of Dr. Berríos, reveals Plaintiff's move was strategic in nature. By moving to voluntarily dismiss without prejudice her claims against co-defendant Dr. Berríos, exactly one week before the filing of dispositive motions, Plaintiff developed a contingency plan. This plan was made manifest by the convenient timing of Plaintiff's next move. On July 11, 2017—six months after the above-mentioned dispositive motions had been filed, and as they were pending, fully briefed, before the Court—Plaintiff moved to set aside the partial judgment of dismissal against Dr. Berríos, requesting the Court reinstate him as co-defendant. (Docket No. 66). Plaintiff grounds her request on the "recently received a report for plaintiff's expert neurologist, Dr. Hausknecht." Id. According to Plaintiff, Dr. Hausknecht's expert report—dated May 26, 2017—establishes that "Dr. Berríos was negligent and is responsible for Plaintiff's damages. (Docket No. 66).

It is important to note that Plaintiff's request to set aside the partial dismissal took place *while* Defendants' dispositive motion (motions for summary judgment and motion in limine) were pending before the Court. In other words, Plaintiff introduced the expert report of Dr. Hausknecht *after* learning Defendants' arguments that threatened her case—mainly the possible exclusion of Dr. Lasalle's expert testimony—Plaintiff's only expert witness at that time. "*A party who knowingly chooses to put all his eggs in one basket is hard-pressed to complain when the basket proves inadequate and the trial court refuses to allow him to substitute a new and previously undisclosed basket for it.*" Samaan, 670 F.3d at 36–37 (emphasis added).

As in most cases, "[t]he sanctioned party's need for the evidence," Esposito, 590 F.3d at 78, the second factor, weighs heavily in Plaintiff's favor. Without the expert testimony of Dr. Lasalle and Dr. Hausknecht, Plaintiff is unable to present any expert opinion sufficient to establish either

the Defendants' duty of care or a breach of the duty owed. <u>see also</u> <u>Martínez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc.</u>, 568 F.3d 278, 285 (1st Cir. 2009). The expert testimony of Dr. Hausknecht is essential to Plaintiff's case. The preclusion of Dr. Hausknecht "although technically not a dismissal of [Plaintiff's] case, [would] effectively amounted to one." <u>Esposito</u>, 590 F.3d at 78.

> Puerto Rico holds health care professionals to a national standard of care. Accordingly, a health care provider has "a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances, regardless of regional variations in professional acumen or level of care. Nevertheless, because Puerto Rico law presumes that physicians exercise reasonable care, a plaintiff bent on establishing a breach of a physician's duty of care ordinarily must adduce expert testimony to limn the minimum acceptable standard and confirm the defendant doctor's failure to meet it.

<u>Cortés-Irizarry v. Corporación Insular De Seguros</u>, 111 F.3d 184, 190 (1st Cir. 1997) (internal quotations and citations omitted); <u>see also</u> <u>Rojas-Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico</u>, 394 F.3d 40, 43 (1st Cir. 2005).

The third factor to consider is "the sanctioned party's justification (or lack of one) for its late disclosure." <u>Esposito,</u> 590 F.3d at 78. This too weighs in favor of exclusion. Initially, Plaintiff did not justify or explain her late disclosure. Later on, Plaintiff offered an explanation in response to Defendants' arguments in support of exclusion. In sum, Plaintiff contends that exclusion is not warranted, arguing that: (1) the May 26, 2016 expert report deadline exclusively pertained to Plaintiff's anesthesiologist expert, Dr. Lasalle;  and (2) the disclosure date of Dr. Hausknecht's report was unknown to Plaintiff "particularly since it was contingent on other matters, therefore his deposition was never discussed." (Docket Nos. 69-1, 87). Eventually Plaintiff stated that "the expert's multiple other professional and personal situations, including the report of the examination and testing of Plaintiff took much longer than expected, to which Plaintiff and her counsel have little control." (Docket No. 87 at 18).

The Court is not persuaded by Plaintiff's proffered justifications. Plaintiff's allegation that the deadline for the expert report's disclosure only applied to Dr. Lasalle is meritless. Nothing in the record supports this contention. "It strains credulity to explain the plaintiff's actions as anything other than a Hail Mary pass to resurrect a case fatally wounded by [Dr. Lasalle's] exclusion." Samaan, 670 F.3d at 37.

The fourth factor is "the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure." Esposito, 590 F.3d at 78. Plaintiff's argument that the late disclosure causes no harm to the Defendants is wishful thinking. See Santiago-Díaz, 456 F.3d at 277. The suggestion that because no settlement conferences, pretrial or jury trial has been set, and that the deposition of its expert witness would cure the procedural defect is flawed and unrealistic. The record supports that Defendants would suffer substantial prejudice if Dr. Hausknecht's report were allowed. Considering the pending dispositive motions, "defendants would be required to withdraw their current motion for summary judgment, depose plaintiff's experts . . . . and—if still deemed prudent—file a new motion for summary judgment." Amoah v. McKinney, 875 F.3d 60, 63 (1st Cir. 2017); see Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (holding that "[t]his is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate.") "The prejudice to defendant, therefore, is obvious." Irizarry-Santiago v. Essilor Indus., 293 F.R.D. 82, 85 (D.P.R. 2013). Not striking the expert report would result in reopening discovery to avoid prejudice against Defendants, extending this litigation that commenced in May 2015.

Finally, the Court considers "the late disclosure's impact on the district court's docket." Esposito, 590 F.3d at 78. The district court has an interest in the efficient management of its docket." Santiago–Díaz, 456 F.3d at 277. "The Court's ability to manage its docket is compromised when a party, without good cause, neglects to comply with reasonable deadlines." Santiago-Lampon v.

1  Real Legacy Assur. Co., 293 F.R.D. 86, 91 (D.P.R. 2013). Plaintiff's conduct in this litigation has

2  severely injured this Court's ability to manage its busy docket efficiently and effectively—it

3  suffices to highlight that this is now one of the oldest cases on the undersigned's docket.

4  For the reasons discussed, Plaintiff's the late disclosure was neither "substantially justified"

5  nor "harmless" and thus that the reports should be struck under Macaulay. Consequently, the

6  untimely disclosure of Dr. Hausknecht's expert report warrants exclusion.

7

8  ### III.    **Defendants' Renewed Motion for Summary Judgment**

9  In their renewed Motion for Summary Judgment, Defendants argue that Plaintiff completely

10  lacks evidence to establish the required causation between the violation of any normative standards

11  and the alleged damages. (Docket No. 78.) Defendants argue summary judgment is proper given

12  the absence of proof as to the essential elements of Plaintiff's negligence claim, namely, a breach

13  of Defendants' duty of care and causation.  Further, they argue that with the exclusion of Dr.

14  Lasalle, Plaintiff lacks expert testimony to establish a breach of duty of care and causation. Id.

15  Plaintiff responded in opposition to summary judgment, arguing that Dr. Hausknecht's

16  expert report defeats summary judgment as it creates genuine issues of material fact that preclude

17  summary judgment. (Docket No. 87). In said report, Dr. Hausknecht's diagnosed Plaintiff's

18  conditions as "transient ischemic attack, reversible ischemic neurologic deficit of the spinal cord."

19  (Docket No. 87). He concludes that Plaintiff's "condition occurred because of blood pressure

20  changes, loss of blood, loss of blood volume and coagulation difficulties that typically occur with

21  vaginal bleeding at the time of delivery or during an abortion." Id.

22  Per leave of Court, Defendants replied, and further argued that allowing a plaintiff to

23  proceed on new, unpled theories after the close of discovery would prejudice defendants, who have

24  focused their discovery efforts on the theories actually pled. "Plaintiff comes full circle and throws,

without any justification or leave from the Court, another new expert theory with her opposition to Motion for Summary Judgment in an egregious violation of this due process doctrine." (Docket No. 91 at 4).

a. <u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see</u> FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

      b.  Discussion

"The rule of decision that applies here is fault-based: Puerto Rico law provides in pertinent part that [a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. LAWS ANN. tit. 31, § 5141. Within this rubric, three elements coalesce to make up a prima facie case for medical malpractice (a species of professional negligence). "Specifically, a plaintiff must establish the duty owed, the occurrence of an act or omission constituting a breach of that duty, and a sufficient causal nexus between the breach and some resultant harm." Martinez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc., 568 F.3d 278, 285 (1st Cir. 2009)

"[C]ausation is an essential element of a claim for medical malpractice under Puerto Rico law. It was the plaintiffs' burden to furnish proof of causation." Id. (citing Cortés–Irizarry, 111 F.3d at 190). ("Notwithstanding proof of both duty and breach, a plaintiff also must offer competent evidence of causation in a medical malpractice case."). To make out causation under Puerto Rico law, a plaintiff must prove, by a fair preponderance of the evidence, that the negligent act or omission was the factor that most likely caused the harm. Id. (citing Lama v. Borras, 16 F.3d 473, 478 (1st Cir.1994)). The First Circuit has repeated held that "in a medical malpractice case under

Puerto Rico law "*a factfinder normally cannot find causation without the assistance of expert testimony.*" <u>Rojas–Ithier</u>, 394 F.3d at 43 (emphases added). "This is so because medical malpractice is a field in which the issues tend to be scientifically driven and more nuanced than in most tort cases." <u>Martínez-Serrano</u>, 568 F.3d at 286.

As stated above, a party moving for summary judgment bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case." That is the case here. The record is completely devoid of evidence to support Plaintiff's medical malpractice claims against Defendants. Plaintiff lacks the assistance of expert testimony, a necessary condition that she must meet to satisfy the causation requirement. Accordingly, Defendant's Renewed Motion for Summary Judgment is **GRANTED**,

## IV. <u>Conclusion</u>

Accordingly, the Court **GRANTS** Defendants' Motion to exclude the testimony of Plaintiff's proposed expert witness, Dr. Hausknecht. (Docket No. 67) and **DENIES** Plaintiff's Motion to set aside voluntary dismissal against Dr. Berríos. (Docket No. 66).

For the reasons stated above, the Court **GRANTS** Defendants' renewed Motion for Summary Judgment. (Docket No. 78). Plaintiffs' claims are hereby **DISMISSED** with prejudice. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 26th day of September, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge